406 So.2d 484 (1981)
The SCHOOL BOARD OF SEMINOLE COUNTY, Florida, Appellant,
v.
Lynette T. CORNELISON and the Seminole Education Association, Appellees.
No. 80-494.
District Court of Appeal of Florida, Fifth District.
October 21, 1981.
Rehearing Denied December 2, 1981.
*485 Ned N. Julian, Jr., Stenstrom, McIntosh, Julian, Colbert & Whigham and Marcia K. Lippincott, Sanford, for appellant.
John J. Chamblee, Jr., Frank, Chamblee & Kelly, P.A., Tampa, for appellees.
FRANK D. UPCHURCH, Jr., Judge.
Appellant appeals an order of the Circuit Court for Seminole County affirming an arbitration award.[1] Appellee was initially employed by appellant on an annual contract as a media specialist for the 1973-74 school year. Her contract was renewed in 1974-75 and 1975-76 but in April of 1976, she was notified her contract would not be renewed. She was paid for the entire period of her contract.
Pursuant to the collective bargaining agreement, appellee filed a written grievance charging that Article XVIII, section B[2] of the agreement had been violated because the school superintendent and other administrative personnel had failed to give her every reasonable opportunity to develop into a useful and productive teacher. She also alleged that she had not received a timely and adequate evaluation as required by the agreement. The grievance was denied.
Arbitration hearings occurred on June 23, 1977. The arbitrator found that the agreement had been violated by the school administrators' failure to counsel appellee as to any weaknesses or deficiencies in her teaching that would preclude her from being recommended for a continuing contract and in failing to properly evaluate her.
The arbitrator ordered appellant to reinstate appellee on an annual contract and awarded back pay. The school board refused to comply and appellees filed an application with the circuit court to confirm the arbitration award.[3] Upon confirmation, the school board took this appeal.
*486 The question presented is whether an arbitrator may require the school board to reinstate a teacher on annual contract to another year's term because of a breach of teacher evaluation procedures in a collective bargaining agreement, where the agreement does not provide a remedy for such violation.
The collective bargaining agreement in question defines the procedures to be followed in making teacher evaluations. It does not, however, specifically provide for reinstatement in annual contract status for breach of such procedures.[4]
In Lake County Education Association v. School Board of Lake County, 360 So.2d 1280 (Fla. 2d DCA 1978), cert. denied, 366 So.2d 882 (Fla. 1978), the Second District Court of Appeal declared that it is the public policy of Florida, expressed through statute, that our elected school boards have the exclusive prerogative to decide whether to re-appoint non-tenured teachers. The court made this declaration in holding that a school board cannot enter into a collective bargaining agreement where its decision not to re-appoint a non-tenured teacher must be based upon proper cause. The court cited Florida statutory law[5] which provides that the school board alone has the power and board alone has the power and duty to dismiss its employees. A "proper cause" provision regarding re-appointment of non-tenured teachers would obviously limit the exclusive authority vested in the board and, in effect, transfer it to an arbitrator.
The Lake County court noted in dictum that several of the opinions cited in support of its ruling were careful to point out that public policy does not prohibit a school board from entering into a collective bargaining agreement which defines procedures to be followed in making teacher evaluations which may lead to a decision not to re-appoint a non-tenured teacher. The court stated that where such an agreement is reached on procedures, the arbitrator's decision granting a non-tenured teacher relief because of the failure to follow such procedures has been upheld.
While the cases cited by the Lake County court for this principle, Cohoes City School Dist. v. Cohoes Teachers' Association, 40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E.2d 878 (N.Y.Ct.App. 1976) and School Committee of West Bridgewater v. West Bridgewater Teachers' Association, 372 Mass. 121, 360 N.E.2d 886 (1977) involved reinstatement, the Lake County court did not specifically declare what relief would be appropriate where evaluation procedures are violated.
Of even more significance is the fact that the Lake County court quoted from Wesclin Education Association v. Board of Education, 30 Ill. App.3d 67, 331 N.E.2d 335 (1975) regarding non-tenured teachers:
Such teachers are not in an "on the job training" status, but are employed as persons qualified by training and practice under the supervision, guidance and training furnished by other educational institutions. Since some of those so qualified may not be capable of serving the best interests of the school, the Legislature has seen fit to allow a broad discretion in termination of their employment, as being in the best interests of the school. Since they have not completed their probationary period they have no vested interest in their employment, of which they are deprived by compliance with the applicable provisions of the School Code in the termination of their employment.
331 N.E.2d at 342.
Wesclin involved a situation wherein probationary teachers were given notice of non-renewal of their contracts without compliance with evaluation procedures and they sought mandamus to prevent their termination. The court held that the board could not, via a collective bargaining agreement, *487 destroy the flexibility which it possessed with respect to the dismissal of non-tenured teachers. The court made the following observation:
It is generally accepted that the purpose of our common school system is to furnish adequate educational facilities and education and training for the students enrolled. A school board is obligated to hire only properly trained, evaluated and qualified teachers. The purpose of our common school system is not to evaluate, train, supervise, guide, and advise teachers although such procedures may be involved incidentally in this development of an education system; but when so involved the purpose is to better the system for the benefit of the students, and not for the benefit of the teachers who may either by indifference or lack of ability display that their employment is not in the best interest of the school district, or is unsatisfactory.
331 N.E.2d at 341.
The opposing philosophy is illustrated by Board of Education v. Bellmore-Merrick, 39 N.Y.2d 167, 383 N.Y.S.2d 242, 347 N.E.2d 603 (N.Y. Ct.App. 1976) and School Committee of West Bridgewater. In these cases the courts, while recognizing that a school board may discharge a probationary teacher without explanation, held that this power may be limited by the terms of a collective bargaining agreement. In Bellmore-Merrick, the court declared:
[t]he evaluation provisions of the agreement were intended to benefit all probationary teachers. The Board's power to dismiss without explanation should not be deemed a license to violate these bargained for rights.
347 N.E.2d at 606.
However, we believe the better view is that the board's failure to follow assessment procedures does not create a remedial right to require the school board to re-employ ab initio,[6] at least where the collective bargaining agreement is silent as to a remedy for such violation. We recognize that a school board might conceivably agree in the collective bargaining agreement to reinstatement where it fails to properly follow evaluation procedures. However, where such a provision is absent, to permit an arbitrator to require renewal of the annual contract would usurp the prerogative of the board to appoint instructional personnel and violate the public policy of this state.[7]Lake County. See In the Matter of Arbitration Between Orange County Classroom Teachers' Association and School Board of Orange County, Federal Mediation and Conciliation Service, File No. 79 K/2309 (May 1980), wherein the arbitrator held that the school board's failure to follow teacher assessment procedures in not renewing an annual contract did not create remedial rights on the part of the affected teacher.
We are aware that a collective bargaining agreement should be broadly construed and all doubts resolved in favor of the arbitrator's authority, but an arbitrator cannot rewrite the agreement and he is bound by it. Western Iowa Pork Co. v. National Packinghouse & Dairy Workers, 366 F.2d 275 (8th Cir.1966); Cosmos Broadcasting v. New Orleans Local Am. etc., 455 F. Supp. 426 (E.D.La. 1978). An arbitrator lacks the authority to revise the agreement in a manner the parties did not contemplate and to which they did not assent. See United Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). This is especially true where the arbitrator's action has the effect of depriving the school board of its sole prerogative, reserved to it by law, to determine whether the contract of a non-tenured employee will be renewed.
We therefore REVERSE.
COBB, J., concurs.
SHARP, J., dissents with opinion.
*488 SHARP, Judge, dissenting.
I respectfully dissent in this case. Enforcement of the arbitrator's award would not deprive the Board of its prerogative in determining whether to renew the contract of a non-tenured teacher. The Board would retain that power, but it would be required to follow the teacher evaluation procedures which the Board agreed in its collective bargaining agreement to employ in making its decision to renew or not renew this teacher. The arbitrator determined that the Board failed to evaluate the teacher as provided in the collective bargaining agreement, and that reinstatement was a proper remedy in this case. I disagree that the arbitrator exceeded his authority in his decision awarding reinstatement[1] regardless of whether or not the collective bargaining agreement specifically provided for this possible remedy for a breach.
In Lake County Education Association v. School Board of Lake County, 360 So.2d 1280 (Fla. 2d DCA), cert. denied, 366 So.2d 882 (Fla. 1978), the court recognized the distinction between agreeing not to dismiss a teacher without proper cause and agreeing to incorporate certain evaluation procedures in the retention decision process. Thus while a school board's responsibility and discretion[2] in the selection of teachers may not be completely usurped by an arbitrator, the method of exercising such power may be limited by the terms of a collective bargaining agreement. Board of Education v. Bellmore-Merrick United Secondary Teachers, Inc., 39 N.Y.2d 167, 383 N.Y.S.2d 242, 347 N.E.2d 603 (1976).
In Cohoes City School District v. Cohoes Teachers' Association, 40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E.2d 878 (1976), the court held that the bargained-for right to supplemental procedural steps preliminary to the District's final action granting or withholding tenure was not a nullity because of the District's right to deny tenure without explanation. The court affirmed the order requiring reinstatement without tenure for one year, so that the District could evaluate the teacher's performance according to the procedures set forth in the agreement.
Massachusetts has joined New York in approving reinstatement as a remedy under similar circumstances despite the school board's exclusive prerogative (as in Florida) to grant tenure. In School Committee of West Bridgewater v. West Bridgewater Teachers' Association, 372 Mass. 121, 360 N.E.2d 886 (1977), the Massachusetts Supreme Court explained how teacher evaluation procedures serve the public interest:
Teacher evaluation procedures, properly carried out, may assist the teacher in improving his or her capabilities to the benefit of the students. They may give the teacher an advance warning that he or she may not be granted continuing employment, thus permitting him or her to consider the necessity of seeking alternative employment. Such procedures may permit the teacher to meet and correct improper or incomplete information which otherwise could be relied upon by the school committee in making a decision concerning renewal of the teacher's contract. Proper teacher evaluation processes, therefore, reasonably may be expected to improve the quality of teaching, to mitigate the harsh abruptness of the unexplained, last-minute negative renewal decision, and to enhance the quality of decisions concerning employment and tenure. [Emphasis supplied].
360 N.E.2d at 888.
Improving the quality of teaching, which results in benefit to the students, should be the primary consideration of a school board in determining which teachers to hire, retain, or dismiss. To paraphrase the majority's quotation from Bellmore-Merrick, the Board's wide discretion in these matters should not provide it with a license to violate *489 bargained-for rights which are intended to benefit all probationary teachers and ultimately the students. The majority fails to strike a balance between the public employee bargaining rights, as manifested by the collective bargaining agreement, and the school system's responsibility to terminate ineffective teachers.
In a case such as this, reinstatement would not afford the nontenured teacher automatic tenure, that being another decision within the Board's control. See Cohoes. Further, reinstatement would not disrupt the educational system, since the arbitrator made no such findings.[3] Finally, where the time for evaluation has long passed (four years after the arbitrator's award in this case), reinstatement may well be the only effective remedy for the Board's violation of these provisions concerning teacher evaluations of the collective bargaining agreement. By virtue of this decision, these provisions have become so many empty words.[4] The majority's reversal gives the wronged teacher no relief and no prospect of any, and the Board no incentive to abide by its collective bargaining agreement.
As the majority points out, all doubts regarding collective bargaining agreements should be resolved in favor of the arbitrator's authority. In another context, the First District Court of Appeal approved and upheld reinstatement as a proper remedy for a state employee who was terminated by the Department of Law Enforcement without the agency following the correct procedure of evaluation. Department of Law Enforcement v. Allen, 400 So.2d 777 (Fla. 1st DCA 1981). I do not believe reinstatement violates Florida's public policy in the context of this case. Accordingly, I would affirm the lower court's order which confirmed the arbitrator's award.
NOTES
[1] While the order provided for the matter to be remanded to the arbitrator for a determination of back pay and other benefits, an order confirming an award made by an arbitrator is appealable, even if further action by the arbitrator is anticipated. State v. Pearson, 154 So.2d 833 (Fla. 1963).
[2] Article XVIII, section B, provides:

The Superintendent and all administrative personnel shall be charged with the obligation of giving all annual contract personnel every reasonable opportunity of developing into useful and productive teachers in the district.
[3] Appellees sought to vacate the portion of the award which declined to require that Cornelison be placed on continuing contract status. The trial court denied such relief and appellees do not seek review of that.
[4] The agreement does provide for reinstatement where a teacher is unjustly discharged during the period of the annual contract. Art. VII, section D; Art. XVIII, sections D, E.
[5] § 230.23(5), Fla. Stat. (1979).
[6] The arbitrator speaks of reinstatement although he actually was renewing the contract for an additional year.
[7] This should not be read, however, as indicating that a school board can waive its prerogative via a provision in a collective bargaining agreement. We do not reach the propriety of such a provision in this case.
[1] Reinstatement has been recognized as an acceptable form of relief against an employer and an acceptable result of arbitration. See Cohoes City School Dist. v. Cohoes Teachers' Ass'n, 40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E.2d 878 (1976); 48A Am.Jur.2d Labor and Labor Relations § 1995 (1979).
[2] See § 230.23(5), Fla. Stat. (1979).
[3] See School Committee of West Bridgewater v. West Bridgewater Teachers' Ass'n, 372 Mass. 121, 360 N.E.2d 886, 890 (1977); cf. Seitz v. Duval County School Board, 366 So.2d 119 (Fla. 1st DCA), cert. denied, 375 So.2d 911 (Fla. 1979) (insubordination and absence from class justified dismissal and precluded remedy of reinstatement and back pay).
[4] See Long Leaf Lumber, Inc. v. Svolos, 258 So.2d 121, 124 (La. Ct. App.2d Cir.1972).